**MITCHELL REED SUSSMAN** #75107
1053 S. Palm Canyon Dr.
Palm Springs, Ca. 92264
Phone (760) 325 - 7191

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **Minoru Imai, etc.,** | No.3:19-cv-02000-GPC-APS |
| Plaintiffs, | PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION, MEMO OF POINTS AND AUTHORITIES AND DECLARATIONS ATTACHED. |
| vs. | |
| **DIAMOND RESORTS etc., et. al.;** | DATE: Jan. 3, 2020 |
| | TIME: 1:30 P.M. |
| | COURTROOM: 2D |
| Defendants. | |

**TO THE INTERESTED PARTIES AND THRIR ATTORNEYS OF RECORD:**

Plaintiffs, **Minoru Imai** and **Mari Imai,** respond to the motion of **Diamond Resorts Corporation,** (hereinafter "DRC"), **Diamond Resorts Hawaii Collection** ("DRHC") and **Diamond Resorts Financial Services, Inc.** ( hereinafter "DRFSI") to compel arbitration as follows:

//

/

-1-

**OPPOSITION TO MOTION TO ARBITRATE**

## 1. Introduction

This case arises from the purchase of a "time-share interest" by plaintiffs from defendants **DRC, DRHC and DRFSI (**collectively **"Diamond").**

It is common knowledge that time-shares are frequently sold through high-pressure sales pitches and other questionable practices, using contracts that most consumer advocates decry as unconscionable and are at the very least contracts of adhesion.

In California, the regulation of "time-share interests" fall within the purview of the California Department of Real Estate.

The typical story one reads about is where the prospective owner is put under the ether with gifts, alcohol and multi - hour presentations and then is asked to sign a multi - page "lifetime" contract which is placed before the would be buyer by a closer.

The culture of these time-share presentations and the stated directive of sales managers to their staff of sales people, is to tell them anything to get the deal. David Mamet's Pulitzer Prize winning play "Glengary Glen Ross" comes to mind, but on steroids.

With this as background, plaintiffs come to this court asking for relief from the Purchase and Security Agreement ("PSA") signed on April 5, 2019, while they were vacationing in Hawaii.

Of utmost importance in ruling on this motion are the facts which gave rise to the PS. Here the plaintiffs are a senior Japanese couple who, after sitting through a 6 – 7 hour sales pitch with little more than a glass of water to drink, became

**OPPOSITION TO MOTION TO ARBITRATE**

dizzy and disoriented and unable to understand not only the nature of the agreement, but also the fact that they were waiving their right to a trial by their peers. ( See; Declaration of Minoru Imai, p. 11, lines 6 – 28 )

The relief sought consists of five causes of action: (1) Fraud in the Inducement and (2) Fraudulent Concealment (3) Rescission, (4) Elder Abuse and (5) Declaratory Relief.

By way of this motion the Diamond defendants' contend that the arbitration clause contained in the Agreement precludes this action.

Plaintiffs oppose the motion on the grounds that the clause is procedurally and substantively unconscionable, that it is unreasonable, fundamentally unfair and void as being against strong California public policy.

**2. Unconscionability**

"Unconscionability" is a generally applicable contract defense under California law (see Civil Code 1670.5 )Two elements must be shown: "procedural" unconscionability, focusing on the manner in which the contract was negotiated (e.g., adhesion contracts); and "substantive" unconscionability, focusing on whether the contract's terms are unreasonably one-sided. [*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 C4th 83, 113-115, 99 CR2d 745, 766-768 ]

"The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as ' " 'overly harsh' " ' ( *Stirlen v.*

-3-

**OPPOSITION TO MOTION TO ARBITRATE**

*Supercuts, Inc.* (1997) 51 Cal.App4th, 1519, 1532, 60 Cal.Rptr.2d 138), ' "unduly oppressive" ' (*Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 925, 216 Cal.Rptr.345), ' "so one-sided as to 'shock the conscience' " (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246, 145 Cal.Rptr.3d 514) (*Pinnacle* )), or 'unfairly one-sided' (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071, 130 Cal.Rptr.2d 892. )

Both procedural and substantive unconscionability must be present to invalidate contract, though they need not be present in equal parts; [*Ajamian v. CantorCO2e, L.P.* (2012) 203 CA4th 771, 795, 137 CR3d 773, 793—"by the use of a sliding scale, a greater showing of procedural or substantive unconscionability will require less of a showing of the other to invalidate the claim." ]

**A. Procedural Unconscionability**

*Procedural unconscionability* pertains to the making of the agreement; it focuses on the oppression that arises from unequal bargaining power and the surprise to the weaker party that results from hidden terms or the lack of informed choice. [*Ajamian v. CantorCO2e, L.P.* , supra, at 793]

" '[T]here are degrees of procedural unconscionability. At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability.... Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum.' " ( *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1244, 200 Cal.Rptr.3d 7 )

-4-

**OPPOSITION TO MOTION TO ARBITRATE**

On its face the present arbitration and jury waiver clause is a contract of adhesion—a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms. (See generally, <u>Neal v. State Farm Ins. Co</u>. *(1961) 199 Cal App 2d 690, 694, 10 Cal Rptr 781*)

The contract in question is such a contract. It is a mass produced standardized pre-printed form prepared by a party with superior bargaining power leaving plaintiffs with the option of either adhering to the contract or rejecting it. As such it is procedurally unconscionable.

**B. Substantive Unconscionability**

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *(Ibid.)* Both elements must be present for a court to refuse to enforce an arbitration agreement. (<u>Sanchez v. Valencia Holding Co., LLC</u> *(2015) 61 Cal.4th 899, 910, 353 P.3d 741(Valencia) )*

Pursuant to the holding in <u>Valencia,</u> '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' " *(Ibid.)* "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *(Id. at p. 912 )*

The PSA is substantively unconscionable in that it seeks to have plaintiffs "waive" their Constitutional right to a jury

-5-

**OPPOSITION TO MOTION TO ARBITRATE**

trial. *Article I, section 16 of the California Constitution.*

In addition, the clause is substantively unconscionable because it fixes the location of the arbitration in the State of Florida, in spite of the fact that the transaction took place in Palm Springs, California and all the witnesses to the transaction are here in Southern California not in Florida. (See: Exhibit 1 to declaration of Julie Kisha, para. 30 e of the PSA )

In the recent case of *Chavarria v. Ralphs Grocery Co.* (9th Cir. 2013) 733 F3d 916, 927 the court refused to enforce arbitration clause based on California's "generally applicable policy against abuses of bargaining power."

**3. The Present Arbitration Clause**

A "true arbitration agreement" consists of several attributes: "(1) a third party decision maker; (2) a mechanism for ensuring neutrality with respect to the rendering of the decision; (3) a decision maker who is chosen by the parties; (4) an opportunity for both parties to be heard, and (5) a binding decision." *Cheng-Canindin v. Renaissance Hotel Associates* (1996) 50 Cal.App.4th
676, 683-84.

Here, the "Arbitration" provision provides that "the arbitrator is . . . JAMS." (See: Exhibit 1 to Motion to Compel Arbitration, para. 16 )

The third attribute set forth by the *Cheng-Canindin* court, requires that the decision maker be "chosen by the parties." Yet, defendant unilaterally selected JAMS.

Additionally, the defendants arbitration clause

-6-

**OPPOSITION TO MOTION TO ARBITRATE**

unilaterally selects the location of the arbitration, the state of Hawaii. (See: Exhibit 1 to Motion to Compel Arbitration, para. 16)

Here, plaintiffs have not been afforded any opportunity to participate in the selection of the decision maker or the location of the arbitration. Further the facts of the case show a clear case of overreaching and elder abuse. Imagine sitting in a sales room for 6 – 7 hours with little more to eat or drink than a glass of water. Add to this the plaintiff's medical condition. Of course he was " dizzy, lightheaded, confused and disoriented" when he signed the PSA. ( See; Declaration of Minoru Imai, p. 11, lines 15 – 16 )

With these facts it would be next to impossible for a trier of fact to conclude that there was a knowing and voluntary waiver of plaintiffs' right to a jury trial.

Finally, the arbitration does not take into consideration the plaintiffs' ability or lack thereof to pay the costs of the arbitration.

In *Roldan v. Callahan & Blaine* (2013) 219 CA4th 87, 96, 161 CR3d 493, 499] the appellate court held that where one or more parties claims an inability to pay, the trial court must calculate the estimated costs of arbitration and evaluate the parties' ability to pay. If any party is unable to pay its share, the moving party can elect either to pay that portion of the arbitration cost or to waive its right to arbitrate that party's claim.

In the present case the arbitration provision requires plaintiffs' to share in cost of the arbitration. An arbitration,

**OPPOSITION TO MOTION TO ARBITRATE**

if compelled, will require the plaintiffs, California residents, to travel to Hawaii.

**4. Unconscionability**

In *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 7 Cal.Rptr.3d 267, (*Gutierrez* ), the court focused on the inherent unfairness of an arbitration agreement which purports to bind a litigant to the alternative forum, while offering no opportunity for the litigant to obtain fee waivers similar to those available in court: "The flaw in this arbitration agreement is readily apparent. Despite the potential for the imposition of a substantial administrative fee, there is no effective procedure for a consumer to obtain a fee waiver or reduction. A comparison with the judicial system is striking. While imposing far lower mandatory fees, the judicial system provides parties with the opportunity to obtain a judicial waiver of some or all required court fees." (*Gutierrez,* at p. 91, 7 Cal.Rptr.3d 267.) Based on that concern, *Gutierrez* held that a mandatory arbitration agreement contained in an automobile lease was substantively unconscionable because it required plaintiffs to pay approximately $8,000 to initiate the arbitration process, without providing any opportunity for them to obtain a waiver on the ground that those costs exceed their ability to pay: "[W]here a consumer enters into an adhesive contract that mandates arbitration, it is unconscionable to condition that process on the consumer posting fees he or she cannot pay." (*Id.* at p. 89, 7 Cal.Rptr.3d 267, fn. omitted.)

*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 98

-8-

**OPPOSITION TO MOTION TO ARBITRATE**

Cal.Rptr.3d 743 (*Parada* ), which relied in part on *Gutierrez* concluded that an arbitration agreement contained in a securities purchase agreement was unenforceable because it imposed unreasonably high forum costs. In determining the provision was unconscionable, this court relied not only on the fact the plaintiffs were of limited means and unable to afford their pro rata share of the arbitration cost, but also on the inference that defendant's goal in drafting the agreement "must [have been] to discourage or prevent Monex customers from vindicating their rights." (*Parada, supra,* 176 Cal.App.4th at p. 1582, 98 Cal.Rptr.3d 743.)

Similarly, in <u>Villa Milano Homeowners Assn. v. Il Davorge</u> (2000) 84 C.A.4th 819, 102 C.R.2d 1, plaintiff condominium unit owners and their homeowners association sued defendant developer, seeking damages for construction and design defects. Defendant filed a petition to compel arbitration based on an arbitration clause contained in the covenants, conditions, and restrictions (CC&Rs), which provided that disputes, including those concerning construction or design, between defendant and either a unit owner or the association would be submitted to binding arbitration. The trial court denied the petition, comparing the arbitration clause to an adhesion contract. In affirming the trial court, the court of appeals said "Because the unit purchasers faced a "take it or leave it" proposition. (84 C.A.4th 826.)

The CC&Rs were drafted solely by defendant and there was no possibility that individual buyers could negotiate. Rather, every buyer took subject to the same set of CC&Rs, or made no purchase

-9-

**OPPOSITION TO MOTION TO ARBITRATE**

at the development at all. There being absolutely no opportunity to negotiate, there was no meaningful choice as to the terms of the CC&Rs. (84 C.A.4th 828.)

**5. Conclusion**

The inequity in the bargaining position of the parties coupled with the factors which led to the execution of the time – share contract, senior citizens with the inability to understand the nature of their acts because of an undisputed medical condition, support a finding by this court that the arbitration, jury waiver and choice of law provisions are of no force and effect.

" When it is claimed . . that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect. . " at the very least plaintiffs should be afforded a reasonable opportunity to prove it. *California Civil Code 1670.5*

Dated: Nov. 15, 2019  _____

Mitchell Reed Sussman

-10-

**OPPOSITION TO MOTION TO ARBITRATE**

**DECLARATION OF MINORU IMAI**

I, MINORU IMAI, declare:

I am a plaintiff in the above entitled action and make this declaration in opposition to the motion to arbitrate and transfer this case to Florida.

I am a senior citizen born in 1948 of Japanese descent. My wife is also Japanese born in 1950. I have been diabetic for most of my adult life. If I do not eat regular meals I become hypoglycemic. When that happens I get dizzy and disoriented.

On the day that my wife and I signed the time – share contract we were asked to attend a seminar. We agreed, not knowing that we would be held in a room for 6 – 7 hours with nothing to eat or drink other than a bottle of water.

When I signed the contract, after 6 – 7 hours sitting in a room without food, I was dizzy, lightheaded, confused and disoriented.

I did not realize what I was signing and certainly did not agree to be bound to a contract of over $400,000.00, for a time – share given that I am retired and on a very limited income.

I was certainly not aware that I was waiving my rights to a jury trial or that I was agreeing to be bound by an arbitration clause.

In fact because of my hypoglycemic state I was confused about what I was being told and what I was signing. I did not understand any part of the contract and only wanted to do whatever the sales person said so that I could leave the seminar room and get some food.

**OPPOSITION TO MOTION TO ARBITRATE**

Further if you know anything about the Japanese culture than you must know that it is the husband who leads. The wife is taught to accommodate rather than confront from an early age. That is certainly the relationship that exists in our household.

Finally, because I am retired ( my wife does not work at all) and on social security I do not have the financial capacity or wherewithal to pay for an arbitration in the state of Hawaii.

If called as a witness I could competently testify to the foregoing as to my personal knowledge, except those matters which are alleged on information and belief and as to those matters I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on Oct. 30, 2019, at Cypress, California

*/s/ Minoru Imai*
Minoru Imai

**OPPOSITION TO MOTION TO ARBITRATE**

| IMAI  v. DIAMOND | 3:19-cv-02000-GPC-AGS |
|---|---|

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this case or proceeding.  My business address is:

**1053 S. PALM CANYON DR., PALM SPRINGS, CALIFORNIA**

A true and correct copy of the foregoing document described **REQUEST FOR APPROVAL OF SUB OR WITHDRAWL OF ATTY** will be served or was served **(a)** on the judge in chambers in the form and manner required by the local rules; and **(b)** in the manner indicated below:

I.! **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General! Order(s) and Local Rule(s) ("LR"), the foregoing document will be served by the court via NEF and hyperlink to the! document.
On   **Nov. 15, 2019**   I checked the CM/ECF docket for this case or  proceeding and determined that the following! person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:!!
blake.osborn@gmlaw.com, tereza.perez@gmlaw.com

☒
**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**

On   **Nov. 15, 2019**   I served the following person(s) and/or entity(ies) at the last known address(es) in this case or proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. (Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed*.)*

HON. GONZALO CURIEL, 941 FRONT ST., # 3185, SAN DIEGO, CA. 92101

☐
☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LR, on      I    served    the    following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| ! NOV. 15, 2019 | JONI RAVENNA | *(signature)* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |